[Civ. No. 1744. Second Appellate District.—June 19, 1915.]

## JAMES DE WEBER, Appellant, v. JOSEPH CASSIDAY, Respondent.

WATER-RIGHTS—WELL—QUITCLAIM DEED TO INTEREST IN—CONSTRUCTION OF.—Where a quitclaim deed purported to convey an undivided one-half interest in a certain well of water, together with the windmill and other appurtenances attached to it for "conveying water to the present home and lands of the said party of the second part, with which said plant is now connected," which well thereafter caved in and was abandoned, the deed cannot be construed as granting an interest in a new well constructed by the successor in interest of the grantor, at her own expense, upon the land some thirty-five feet distant from the old well, notwithstanding the equipment of the old well was used with the new one, the constructor of the new well having purchased it from the person on whose land the first well was located.

ID.—TITLE BY PRESCRIPTION—WHEN NOT SHOWN—USE OF WATER BY TENANT.—Where the owner of the land upon which the new well was constructed occupied, as a tenant, the land to which the water from the old well had been conducted, and during her tenancy, connected the new well with the pipe-line extending to the property that she occupied as tenant, but at the time of the termination of the tenancy she disconnected the pipe, shut off the flow of water

and refused to recognize the owner or his tenant as possessing any interest in the new well or right to receive water therefrom, the facts show a want of all the elements essential to constitute a prescriptive right to take the water from the well, as the use was interrupted and was not adverse.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order denying a new trial. S. E. Crow, Judge.

The facts are stated in the opinion of the court.

B. F. Thomas, for Appellant.

William G. Griffith, and C. Kelley Hardenbrook, for Respondent.

SHAW, J.—The purpose of the action was to obtain a decree declaring plaintiff the owner of an undivided one-half interest in and to a certain well wherein water had been developed, together with a like interest in the pump and windmill used in raising the water therefrom and pipe-line conducting the same for use upon plaintiff's premises, and to enjoin defendant from interfering with such use.

Judgment went for defendant, from which, and an order denying a motion for new trial, plaintiff appeals.

It appears that in April, 1898, Frank Ransom and his wife were the owners of the northeast quarter of the southwest quarter of section 26, and Ira Winget was the owner of the west half of the southeast quarter of said section; that prior to April 11, 1898, the Ransoms and Winget had constructed a well located, as they believed, upon said northeast quarter of the southwest quarter of said section 26 so owned by the former, but which, in fact, as found by the court, was located on the southeast quarter of the northwest quarter of the section, owned by other parties. After the supply of water was developed in the well it was equipped with appliances for raising the water and a pipe-line constructed leading therefrom to the land so owned by Winget. Thereafter, on April 11, 1898, the Ransoms executed a deed whereby they remised, released and quitclaimed to Winget "the undivided one-half interest in that certain well of water and the windmill, tank, pump, pipe, and all appurtenances thereunto attached or in any way connected therewith,

needful for pumping and conveying water to the present home and lands of the said party of the second part (Winget), with which said plant is now connected, and which said well and pumping plant is located at or near the northwest corner of the northeast quarter of the southwest quarter of section 26.'' From thence for a period of seven or eight years, to a time when this well was destroyed by caving in, Winget obtained water from this well and exercised the rights of a tenant in common therein. When the well caved in the further use thereof was abandoned and Mrs. Burbridge, the then owner of the Ransom land, at her own expense, caused to be constructed thereon a new well, located some thirty-five feet from the old well, and in equipping the same she removed from the old well the windmill and pump, installing them in the new well. Plaintiff has acquired title to the Winget land, and defendant is now the owner of the Ransom land.

The court, as stated, found that the old well and pumping appliances installed therein were not constructed upon the Ransom land, but upon the southeast quarter of the northwest quarter of said section, by reason of which fact defendant insists that as the Ransoms had no title to the land upon which the old well was located, the quitclaim deed conveyed no interest therein. Appellant, however, insists the evidence fails to support this finding, his contention being that the evidence shows the well to have been located upon the Ransom land. To our minds, it is immaterial whether so located or not. Conceding it to have been located upon the Ransom land, as both parties to the quitclaim deed believed, the rights of Winget and his successors in interest must be measured by the description in the Ransom deed. This was a one-half interest in the well and appurtenances thereunto attached, *with which plant the home and land of Winget were at the time of the execution of the deed connected.* Clearly, the deed had reference to the old well, which, as stated in *Davis* v. *Spaulding,* 157 Mass. 431, [19 L. R. A. 102, 32 N. E. 650], when used as a general term of description, ''designates the portion of land under and occupied by the excavation, and its surrounding retaining walls and any structures or appliances built upon the land to facilitate its use, and also the water at any time actually in the *excavation,*'' citing *Johnson* v. *Rayner,* 6 Gray (Mass.), 107,

and *Mixer* v. *Reed*, 25 Vt. 254. As said by appellant, "the
caving in of the old well did not destroy the easement cre-
ated by the Ransom deed," since "the well," being a term
of general description and importing the land upon which
it was constructed, might be restored and the easement con-
tinue to be operative thereon. While plaintiff might have
exercised his right to reconstruct the well, clearly he could
not have entered upon other parts of the tract and dug a
well in lieu of that destroyed. We perceive no distinction as
to the rule applicable to a well the construction of which
is projected downwards from the surface of the ground,
and a house the erection of which is projected upwards there-
from. The Ransom deed, so far as it conveyed to Winget
an interest in the well, may be likened to the conveyance of
an undivided one-half interest in a house and the ground
upon which it stands by the owner of a larger tract of which
that conveyed is a part. Suppose the house is partially de-
stroyed by fire, and, neither party interested therein making
repairs, the grantor duplicates its construction on another
part of the land; surely his grantee cannot claim any in-
terest in the new structure. There is nothing in the Ran-
som deed which imposes any duty upon defendant to keep
the well in repair for plaintiff's use. Since neither party
did anything toward the reconstruction thereof, such inaction
worked an abandonment of the well by both. Thereupon
Mrs. Burbridge, the then owner of the Ransom tract, dug a
new well upon another part of the land, It is impossible to
conceive any theory under which plaintiff's interest, *so lim-
ited by the terms of the deed,* could be made to apply to
this well so constructed upon such tract of land. Such well
was not subject to any right or easement acquired by Winget
under the Ransom deed.

It appears that the old well, according to the uncontra-
dicted evidence of a survey made, was not located on the
Ransom land, but upon adjoining land, ownership of which
was claimed by W. W. Doerges, by virtue of which fact he
likewise claimed the windmill and pump connected there-
with and which he had removed from the old well so claimed
to be upon his land, and used them in connection with an-
other well thereon. Mrs. Burbridge, for a consideration, ob-
tained this pump and windmill, which she installed at the
new well. Thus appropriating them, assuming plaintiff had

an interest therein and conceding no foundation for Doerges'
claim, gave plaintiff no title in the new well or right to take
water therefrom.

Appellant finally insists that he has acquired an easement
to take water from the new well by prescription. This claim
is based upon the fact that Mrs. Burbridge, while owner
of the Ransom land and after constructing the new well
thereon, occupied the Winget land, now owned by the plain-
tiff, as his tenant. During this tenancy she connected the
new well with the pipe-line extending to the Winget home,
through which she obtained a supply of water for her use
during her tenancy. At the termination thereof she dis-
connected the pipe and shut off the flow of water to the
Winget land, now owned by the plaintiff, and refused to
recognize plaintiff or his tenant as possessing any interest
in the new well or right to receive water therefrom. The
evidence produced shows a want of all the elements essential
to constitute a prescriptive right in plaintiff to take water
from the well. Not only was the use had by plaintiff and his
predecessors in interest therein broken and interrupted, but
it was not adverse. To constitute the prescriptive period
of five years, there must be included therein the use of the
water by Mrs. Burbridge during her tenancy of the land
owned by plaintiff. Clearly her use thereof was not by vir-
tue of the existing relation of landlord and tenant, since
the landlord did not own the supply of water, nor, at that
time, so far as shown by the record, claim the right to water
from the new well, but it was the use of her own estate, as
to which there could be no adverse user against herself. If
A, owner of a lot upon which he has a well of water, oc-
cupies as tenant of B for a period of five years a house on
an adjoining lot to which he, through pipes, conducts a
supply of water from his well, it cannot be said that by reason
of such fact B has obtained an easement in A's well for
taking water to be used in the former's home.

Without regard to plaintiff's rights in the old well and its
appliances, together with the pipe-line, the rights to none
of which are here involved, we are clearly of the opinion that
upon the record he has no interest in the new well or right
to receive water therefrom. This view of the case renders
it unnecessary to discuss other errors presented by appellant.

They are immaterial in that in no event were plaintiff's rights prejudiced thereby.

Judgment and order affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 16, 1915.